## STANDARD OIL CO. v. UNITED STATES.

### No. K–100.

Court of Claims.
March 13, 1933.

James H. Hayes, of New York City, for plaintiff.

J. F. Staley, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen. (W. Clifton Stone, of Washington, D. C., on the brief) for the United States.

Before GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

WILLIAMS, Judge.

The plaintiff, at and during the period involved, was the sole beneficial owner of the Baltish-Americanishe Petroleum Import Gesellschaft, a limited liability company, organized under the laws of the Free City of Danzig. The Baltish-Americanishe Petroleum Import Gesellschaft was, during the period involved, the owner of tank vessels Zoppot, Gedania, and Baltic. The vessels were registered under and flying the flag of the Free City of Danzig, and were under charter to and operated by the plaintiff. Upon arrival of the vessels at ports of the United States, between August 15, 1920, and April 22, 1921, the United States assessed and collected alien-tonnage taxes amounting to $30,141.50, under section 4219 of the Revised Statutes,[1]

---

[1] "Sec. 4219. Upon vessels which shall be entered in the United States from any foreign port or place there shall be paid duties as follows: On vessels built within the United States but belonging wholly or in part to subjects of foreign powers, at the rate of thirty cents per ton; on other vessels not of the United States, at the rate of fifty cents per ton. Upon every vessel not of the United States, which shall be entered in one district from another district, having on board goods, wares, or merchandise taken in one district to be delivered in another district, duties shall be paid at the rate of fifty cents per ton. Nothing in this section shall be deemed in any wise to inpair any rights or privileges which have been or may be acquired by any foreign nation under the laws and treaties of the United States relative to the duty of tonnage on vessels. On all foreign vessels which shall be entered in the United States from any foreign port or place, to and with which vessels of the United States are not ordinarily permitted to enter and trade, there shall be paid a duty at the rate of two dollars per ton; and none of the duties on tonnage above mentioned shall be levied on the vessels of any foreign nation if the President of the United States shall be satisfied that the discriminating or countervailing duties of such foreign nations, so far as they operate to the disadvantage of the United States, have been abolished. In addition to the tonnage-duty above imposed, there shall be paid a tax, at the rate of thirty cents per ton, on vessels which shall be entered at any custom-house within the United States from any foreign port or place; and any rights or privileges acquired by any foreign nation under the laws and treaties of the Unit-

as amended title 46, § 121, USCA; and during.the same time assessed and collected from the same vessels, under section 4225 of the Revised Statutes,[2] as amended, title 46, § 128, USCA, as "light moneys," the sum of $30,141.50. The said alien-tonnage taxes and light moneys in a total amount of $60,283 were paid to the United States by the plaintiff under protest, and claims for the refund or remission thereof were in each instance filed by the plaintiff, but no part thereof has been refunded or remitted to plaintiff.

The Free City of Danzig has at no time since its creation as such imposed any discriminating duties of tonnage or imposts upon vessels or cargoes of the United States entering its port, and no such duties were imposed and collected by it at and during the time between August 15, 1920, and April 22, 1921.

On May 6, 1921, subsequent to the imposition and collection of the taxes involved, the President of the United States, under the authority vested in him by section 4228, Rev. St., as amended (46 USCA § 141), and pursuant to said section, issued and promulgated the proclamation set out in finding XVI, the effect of which was to discontinue and suspend the imposition and collection of the tonnage duties and imposts against the vessels of Poland and the vessels of the Free City of Danzig entering the ports of the United States, such suspension to be effective on and after the date of the proclamation.

The plaintiff contends:

"(1) That sections 4219 and 4225 of the Revised Statutes were not intended to apply and did not apply to plaintiff's vessels flying the flag of the Free City of Danzig;

"(2) If sections 4219 and 4225 of the Revised Statutes are held to apply to plaintiff's vessels, the tonnage taxes and light moneys were improperly collected as the President of the United States was notified, prior to the imposition of the tonnage taxes and light moneys complained of, that no discriminatory taxes on tonnage were or had at any time been imposed by the Free City of Danzig on vessels of the United States."

The first contention is based on the provision of section 4219, which reads: "None

ed States relative to the duty of tonnage on vessels shall not be impaired; and any vessel any officer of which shall not be a citizen of the United States shall pay a tax of fifty cents per ton."

[2] "Sec. 4225. A duty of 50 cents per ton, to be denominated 'light money,' shall be levied and collected on all vessels not of the United States, which may enter the ports of the United States. Such light money shall be levied and collected in the same manner and under the same regulations as the tonnage duties."

of the duties on tonnage above mentioned shall be levied on the vessels of any foreign nation if the President of the United States shall be satisfied that the discriminating or countervailing duties of such foreign nations, so far as they operate to the disadvantage of the United States, have been abolished."

It is urged that, since a discriminating or countervailing duty that never existed can not be abolished, and as the Free City of Danzig had not at any time imposed discriminating or countervailing duties on vessels of the United States, section 4219 is not applicable to plaintiff's vessels; that the same is true as to section 4225, as it provides that the "light money" to be imposed "shall be levied and collected in the same manner and under the same regulations as the tonnage duties" imposed by section 4219. It is contended that, since the statutes under which the taxes were collected are inapplicable to the plaintiff's ships, the taxes were illegally exacted and collected.

Section 4219 first imposes a flat duty of 50 cents a ton upon every vessel, not built within the United States, entering the United States from any foreign country. Section 4225 under which the light money tax is imposed is alike general in its terms and applies to the vessels of all foreign countries entering the ports of the United States. It carries no exceptions. Section 4219, however, provides that none of the duties on tonnage imposed by the section shall be levied "if the President of the United States shall be satisfied that the discriminating or countervailing duties of such foreign nations, so far as they operate to the disadvantage of the United States, have been abolished."

Section 4228 of the Revised Statutes as amended (title 46, § 141, USCA) provides: "Sec. 4228. Upon satisfactory proof being given to the President, by the government of any foreign nation, that no discriminating duties of tonnage or imposts are imposed or levied in the ports of such nation upon vessels wholly belonging to citizens of the United States, or upon the produce, manufactures, or merchandise imported in the same from the United States or from any foreign country, the President may issue his proclamation, declaring that the foreign discriminating duties of tonnage and impost within the United States are suspended and discontinued, so far as respects the vessels of such foreign nation, and the produce, manufactures, or merchandise imported into the United States from such foreign nation, or from any other foreign country; the suspension to take effect from the time of such notification being

given to the President, and to continue so long as the reciprocal exemption of vessels, belonging to citizens of the United States, and their cargoes, shall be continued, and no longer."

■■ Sections 4219 and 4228 relate to the same subject-matter, in that each deals with the conditions under which the tonnage duties imposed on foreign vessels entering ports of the United States may be suspended. They must be considered as parts of one law and construed as such. The essence of the intent and meaning of the two sections, when considered together as parts of one law, is that vessels of foreign nations entering our ports may be exempted from payment of tonnage and impost duties, upon a showing satisfactory to the President of the United States that no discriminating duties of tonnage or imposts are imposed in the ports of such nations against the vessels of the United States. The one important and necessary thing to be shown by the nation seeking the exemption of its vessels from the tax is that such nation, at the time it seeks the exemption, does not impose discriminating duties upon the vessels of the United States, and such showing under both section 4219 and section 4228 must be made to the satisfaction of the President of the United States. It is immaterial, so far as the application of sections 4219 and 4225 to plaintiff's vessels are concerned, whether the Free City of Danzig had at some time in the past imposed discriminating duties of tonnage or imposts on vessels of the United States and had prior to the imposition of the taxes involved abolished such duties, or whether it had never imposed such duties. Conceding that the duties imposed by sections 4219 and 4225 are retaliatory in their nature and intent, they are by their terms applicable to all foreign nations alike, and nondiscriminating nations may have their vessels relieved of paying the duties only if the President of the United States be satisfied that, at the time the exemption is claimed, such country does not impose like discriminating duties against vessels of the United States, and issues his proclamation suspending and discontinuing the imposition of such taxes. As will be seen later, no satisfactory proof, at the time the taxes involved were imposed and collected, had been given to the President that the Free City of Danzig did not impose and levy tonnage duties or imposts upon the vessels of the United States. Consequently, sections 4219 and 4225 applied to plaintiff's vessels at the time the taxes were imposed.

The plaintiff's second contention is that prior to the dates of the imposition and collection of the taxes the President of the United States was notified that the Free City of Danzig had at no time imposed tonnage or discriminating taxes on the vessels of the United States.

As we have seen, the proclamation of the President suspending and discontinuing the duties of tonnage and impost upon vessels of the Free City of Danzig was promulgated May 6, 1921, subsequent to the imposition and collection of the challenged taxes. The proclamation provided that the suspension should take effect on and after the date of its promulgation.

The plaintiff's contention is that the date of the presidential proclamation is not controlling; that prior to the issuance of the proclamation, and prior to the imposition and collection of the taxes, satisfactory proof that no discriminating duties were imposed or levied upon vessels of the United States by the Free City of Danzig had been given to the President; and that the date on which such proof was furnished to the President is the controlling date in respect to the suspension and discontinuance of the taxes imposed upon vessels of the Free City of Danzig.

It is contended that this proof was furnished to the President (1) on June 28, 1919, when provision was made for the establishment of the Free City of Danzig in the treaty of Versailles, of which the United States was a signatory; (2) on November 15, 1920, when the Free City of Danzig came into existence by virtue of the proclamation of the League of Nations issued October 27, 1920, and (3) on February 16, 1921, when the State Department received a telegram from its representative at Danzig stating that the Danzig Senate had advised the consulate in writing that no discriminating duties were at that time or had at any time been levied on American vessels or cargoes since the establishment of the Free City. The plaintiff, therefore, says that if sections 4219 and 4225 are applicable to its vessels, and a proclamation under section 4228 was necessary to relieve its vessels of the payment of tonnage taxes and light moneys, that the effective date of the proclamation issued on May 6, 1921, is properly June 28, 1919, and not May 6, 1921, the date of the proclamation.

The Free City of Danzig came into existence as a result of the peace settlement effected by the treaty of Versailles. By article 102 the Principal Allied and Associated Powers agreed to establish the territory of the Free City of Danzig and declared that it was to be placed under the protection of the League of Nations; by article 103 it was provided

that a constitution for the Free City of Danzig should be drawn up, with a high commissioner to be appointed by the League of Nations; and by article 104 the Principal Allied and Associated Powers pledged themselves to negotiate a treaty, in which Poland and the Free City of Danzig were to be the parties, which was to come into force simultaneously with the establishment of the Free City of Danzig, for the purpose of securing to Poland certain rights, mainly of an economic character. Paragraph (6) of article 104 further provides that the conduct of the foreign relations of the Free City of Danzig should be under the government of Poland. The treaty referred to in article 104 was subsequently concluded between Poland and Danzig, November 9, 1920, in which the rights conferred on Poland in the treaty of Versailles in respect to the Free City of Danzig were ratified and confirmed. Pursuant to article 103 of the treaty of Versailles a constitution for the Free City of Danzig was subsequently drawn up, was approved by the high commissioner of the League of Nations on May 11, 1922, and proclaimed at Danzig on June 14, 1922. Article 41, paragraph 6 of which provides: "The Senate shall represent the Free City of Danzig in so far as this is not contradictory to the stipulations providing for the conduct of the foreign relations of the Free City of Danzig by the Polish Government, in accordance with article 104, paragraph 6, of the treaty of peace of Versailles."

On April 23, 1921, the State Department was advised by the American minister at Warsaw, Poland, that the Polish government stated that vessels and cargoes under the American flag were not subject to any special taxes upon the waters of the Republic of Poland and of the Free City of Danzig. Thirteen days later, on May 6, 1921, the President issued his proclamation suspending and discontinuing the discriminating duties of tonnage and imposts in respect to vessels of Poland and of the Free City of Danzig, to be effective from that date.

■■■ The defendant urges that since the United States did not ratify the treaty of Versailles and did not participate in any way in the establishment of the Free City of Danzig, nor in the drawing up of its constitution, and that the United States had from the establishment of the Free City of Danzig conducted all diplomatic negotiations with it through the Republic of Poland, satisfactory proof that the Free City of Danzig did not impose discriminating duties on vessels of the United States was not furnished to the President until April 23, 1921, the date on which the Polish government officially communicated that information to the American Minister at Warsaw. It is contended, therefore, that under no theory was the Free City of Danzig entitled to have its vessels relieved of the payment of tonnage duties and taxes provided in sections 4219 and 4225 prior to that date. The contention is historically and diplomatically correct, but we do not base our decision upon it, as the court, in our opinion, is without authority to go behind the proclamation of the President to examine and determine what constitutes "satisfactory proof being given the President," or the date on which "satisfactory proof" was furnished to him. The ascertainment of these facts is imposed on the President by the statute and is a condition precedent to his authority to issue a proclamation suspending and discontinuing the imposition of the taxes. Who but the President himself can say when "satisfactory proof" has been given to him that a foreign nation does not impose tonnage duties and imposts on vessels of the United States? The answer, we think, is obvious—no one.

■■ The duties and imposts on foreign vessels imposed by sections 4219 and 4225 can only be suspended by a proclamation of the President issued pursuant to section 4228. Until such proclamation has been issued the taxes provided in these sections are legally imposed and collected. From the effective date of such proclamation the imposition of the discriminating taxes may no longer be imposed. The controlling date as to the suspension and discontinuance of the imposition of the taxes is the effective date of the President's proclamation, in this case May 6, 1921. The taxes involved having all been imposed and collected prior to that date were legally assessed and collected.

The plaintiff is not entitled to recover, and the petition is dismissed. It is so ordered.

BOOTH, Chief Justice, took no part in the decision of this case on account of illness.